LANDRIEU, Judge.
In three (3) consolidated, personal injury cases, we are asked to decide whether the Orleans Parish School Board executed a valid rejection of uninsured motorist coverage to preclude these claims against its insurer. On the basis of our reading of the relevant statute and the jurisprudence interpreting it, we conclude that the intended waiver of coverage is sufficient to effect a valid rejection, and, accordingly, we reverse the decisions of the district court.
FACTS:
First Horizon Insurance Company (hereinafter FHIC) issued a three (3) year comprehensive automobile policy, covering Orleans Parish School Board (hereinafter *706 OPSB) vehicles, which was effective November 15, 1984. Although the deposition of the OPSB Insurance Administrator, William Garibaldi, indicates the OPSB’s longstanding policy to reject or select lower limits of uninsured motorist coverage, the relevant endorsements were not executed at the inception of the policy. In April, 1985, a change in the policy was requested by a representative of the OPSB to limit uninsured motorist coverage on private passenger vehicles and to reject such coverage on all other vehicles. The Policy/Policy Master Change Request form designated an effective date, the inception of the policy, for the limited coverage for certain vehicles. The effective date for the rejection of coverage for other vehicles was not specifically designated on the form. According to the processor, the requested changes were completed on April 18, 1985, and the respective endorsements were signed by Mr. Garibaldi on May 6, 1985. As completed, Endorsement No. 16, which selected lower limits of uninsured motorist coverage for private passenger vehicles, specified an effective date of November 15, 1984, the inception date of the policy, and Endorsement No. 18, which rejected coverage for all other vehicles, specified an effective date of November 15, 1985. By Endorsement No. 30, issued August 20, 1987, almost two years after the occurrence of the accidents sued upon and after the insurer was joined as a party defendant, Endorsement No. 18 was “amended” to formally change the effective date from November 15, 1985 to November 15, 1984.
The referenced accidents involving drivers and an aid for OPSB buses occurred on October 3, 1985, on September 12, 1985, and on October 15,1985. The injured party in each accident filed suit in the Civil District Court for the Parish of Orleans, and each ultimately sought underinsured motorist coverage from FHIC, the insurer for OPSB vehicles. In each case, FHIC denied coverage on the basis of the rejection of uninsured motorist coverage by the OPSB.
Contending that there was no genuine issue of material fact concerning the availability of uninsured motorist coverage, FHIC filed motions for summary judgment in each matter.[1] Plaintiffs filed cross motions for summary judgment on the issue of coverage. On April 19, 1991, the trial judge granted summary judgment in favor of the plaintiffs and against FHIC and decreed that, at the time of each accident, there was in effect uninsured motorist coverage equal to the limits of liability coverage for the policy.
DISCUSSION:
In Louisiana, uninsured motorist coverage is provided for by statute, La. Rev.Stat.Ann. § 22:1406 (West 1978 & Supp.1992),[2] and embodies a strong public *707 policy. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987) (citing A.I.U. Insurance Co. v. Roberts, 404 So.2d 948 (La.1981) and Breaux v. Government Employees Ins. Co., 369 So.2d 1335 (La.1979)). Every automobile liability policy delivered or issued for delivery in this state is impliedly amended to include uninsured motorist coverage unless the coverage is validly rejected. Giroir v. Theriot, 513 So.2d 1166, 1167 (La.1987). Uninsured motorist coverage is determined, then, by the applicable statutes as well as the provisions of the contract. A.I.U. v. Roberts, 404 So.2d 948, 951 (La.1981). The statute is designed to promote recovery of damages for innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection, when the tortfeasor is without insurance, and as additional or excess coverage, when he is inadequately insured. To carry out this objective, the Louisiana Supreme Court has liberally construed the statute. Id. (citing Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982)).
Nevertheless, uninsured motorist coverage, unlike liability insurance, which is mandatory, may be specifically rejected by the insured in the insurance contract, pursuant to the statutory guidelines. However, any exception to the mandatory uninsured motorist coverage is to be strictly construed. Henson v. Safeco Ins. Co., 585 So.2d 534, 537 (La.1991). Therefore, unless the insured’s expression of desire to waive uninsured motorist coverage, however clear, meets the formal requirements of law, the expression does not constitute a valid rejection. Jordan v. Honea, 407 So.2d 503, 506 (La.App. 1st Cir.1981), writ denied 409 So.2d 654, 660 (La.1982). And, the insurer has been held to bear the burden of proving any insured named in the policy rejected the coverage in writing. Roger v. Estate of Moulton, 513 So.2d at 1130 (citing Cheadle v. Francois, 470 So.2d 255 (La.App. 4th Cir.1985)).
Since September 1, 1987, the formal statutory requirements are that the rejection or selection of lower limits be made only on a form designed by each insurer. That form must be signed by the named insured or his legal representative and is presumed to become a part of the policy, whether or not it is physically attached. However, at the execution of Endorsement No. 18, the only statutory requirements were that the rejection of coverage be “in writing” and be signed by the insured. In addition to the statutory requirements, the jurisprudence required that the rejection be clear and unmistakable. Roger v. Estate of Moulton, 513 So.2d at 1130. Accordingly, the Louisiana Supreme Court concluded that a letter from the insured to the insurer containing imprecise and prospective language fell far short of the strict requirements of the law. Id. at 1131.
In this case, both parties to the contract, the insurer and the OPSB, unequivocally state that Endorsement No. 18 was executed to reform the insurance policy at issue. As evidenced by affidavits submitted in support of its motion for summary judgment, it is uncontroverted that that intent was to reject uninsured motorist coverage. The insured executed the rejection in writing on a form that satisfies even the subsequently amended statutory requirement.
The only controversy regarding the rejection involves an obvious typographical or clerical error concerning its effective date. Although the rejection of uninsured motorist coverage by the insured is clear and unmistakable, the effective date on Endorsement No. 18 is stated to be November 15, 1985 instead of November 15, 1984-Between the parties to the contract of insurance, however, there is no dispute concerning either the rejection or the effective date.
Therefore, we conclude that the defendant/insurer has borne its burden of proving that uninsured motorist coverage was rejected by the insured, the OPSB, that the rejection was in writing and signed by the legal representative of the insured, and that the rejection was effective as of the *708 date of execution of Endorsement No. 18, May 6, 1985.
Accordingly, the judgments of the district court, granting the motions for summary judgment in favor of Vergie Washington, Alice Brown, and Julia and Louis Adams, Jr. and dismissing the motions for summary judgment filed on behalf of First Horizon Insurance Company, are reversed.
REVERSED.
BARRY, J., concurs with the result.
PLOTKIN, J., concurs with written reasons.

. By Act No. 71 of the 1992 Legislative Session, La.Code Civ.Proc. art. 966(D) was enacted to specifically allow summary judgment to be rendered on the issue of insurance coverage alone. However, the same Act also amended La.Code Civ.Proc. art. 1915(A)(3) to provide that a judgment rendered pursuant to art. 966(D) was not a final judgment. Although only a final judgment can be appealed, we conclude that the referenced act has prospective application only and that this appeal is therefore properly before us.

. During the relevant period, La.Rev.Stat.Ann. § 22:1406 provided in pertinent part that
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(l)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclu *707 sively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.