682 So.2d 326 (1996)
Donald MOYLES
v.
Reina Maria CRUZ, et al.
Cynthia JAMES
v.
Samuel Joshua COLEMAN, et al.
Nos. 96-CA-0307, 96-CA-0308.
Court of Appeal of Louisiana, Fourth Circuit.
October 16, 1996.
Rehearing Denied November 22, 1996.
*327 W. Gregory Merritt, Silbert & Garon, New Orleans, for Cynthia James.
Gregory P. Snodgrass, Kenan S. Rand, Jr., Christovich & Kearney, New Orleans, for Progressive Casualty Insurance Company,
Before BYRNES, CIACCIO and LOBRANO, JJ.
BYRNES, Judge.
Plaintiff, Cynthia James,[1] appeals the summary judgment dismissal of her claim for uninsured motorist ("UM") coverage against Progressive Casualty Insurance Company ("Progressive"). We affirm.
Cynthia James was a passenger on a Regional Transit Authority ("RTA") bus on February 14, 1992, when it collided with a vehicle operated by defendant, Reina Maria Cruz. Ms. James sued Cruz and others, including Progressive, RTA's UM carrier. Ms. James's suit was consolidated with the suits of other passengers on the bus.
Progressive moved for summary judgment denying coverage based upon the UM rejection form executed by RTA's chairman, Kern Reese. Ms. James urged a cross motion for partial summary judgment, claiming that Progressive's rejection form did not effect a valid waiver of coverage by the RTA.
The trial court denied Ms. James' motion, granted Progressive's motion and dismissed Ms. James' claim against Progressive. Ms. James appeals.
This case represents consolidated cases of plaintiff/passengers on the RTA bus. The insurance policy has a routine UM selection/rejection form signed by RTA's chairman. Therefore, the issue in this case of whether or not the insurance policy provides UM coverage as a matter of law may effect other claims under this policy or other RTA policies which contain the same UM selection/rejection form.
Absent a valid rejection by the insured, UM coverage is specifically read into all automobile liability policies in the amount provided for bodily injury coverage. La. R.S. 22:1406(D)(1)(a)(1); Henson v. Safeco Ins. Companies, 585 So.2d 534 (La.1991). The policy at issue in this case is an excess indemnity *328 policy[2] with liability limits of $4,750,000.
Appellate courts review summary judgments de novo. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. McCrae v. Hankins, 720 F.2d 863, 865 (5 Cir. (La.) 1983). A material fact is one whose existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery, i.e., one that would matter on the trial of the merits. Smith v. Our Lady of the Lake Hosp. Inc., supra. A genuine issue is a triable issue. Id. at 751. Even under the amended version of article 966, if genuine issues of fact remain, this court must still reject summary judgment. In Short v. Giffin, 96-0361 (La.App. 4 Cir. 8/21/96), 1996 WL 478111, 682 So.2d 249, this court found that the amended statute, La. C.C.P. art. 966, applies retroactively but does not change the law regarding the burden of proof in a summary judgment proceeding although legislative intent is to favor summary judgments. See also Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580; and Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4 Cir. 9/11/96), 1996 WL 519834, 681 So.2d 19.
Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute which can properly be resolved within the framework of a motion for summary judgment. Garcia v. Certified Lloyds Insurance Co., 598 So.2d 1278 (La.App. 4 Cir.1992), writ denied, 604 So.2d 969 (La. 1992).
In support of its motion for summary judgment, Progressive offered the waiver executed by RTA which reads:
I hereby acknowledge that the above mentioned Company has offered me Uninsured Motorist's Coverage and where applicable, Underinsured Motorist's Coverage, with limits equal to the Bodily Injury Liability Limits I have selected. However, I hereby elect to purchase limits of Uninsured Motorist's coverage that are lower than the Bodily Injury limits selected.
I also agree that this endorsement will apply to this policy and all future renewals unless otherwise directed in writing.
As witness my signature, I elect to purchase the following limits of Uninsured Motorist's coverage:
() I accept Uninsured Motorist's Coverage at the minimum limits required by the state financial responsibility law being:_____________.
() I want Uninsured Motorist's Coverage with the following increased limits: __________.
(X) I do not want Uninsured Motorist's Coverage. I reject the coverage completely.
 /s/ Kern A. Reese 6/16/89
Progressive also offered an affidavit signed by Kern Reese in which he confirms his position with the RTA; details the authority vested by his position, which included entering into insurance contracts; identifies the policy in question; states that the RTA uniformly rejects UM coverage; that it was RTA's express intent to reject said coverage and that decision was an informed one.
La. R.S. 22:1406(D)(1)(a) provides that uninsured motorist coverage exists in amounts not less than the limits of bodily injury liability unless an insured rejects in writing the coverage or selects lower limits. The clear purpose of the statute is to promote the recovery of damages for innocent victims when the tortfeasor is either uninsured or underinsured. This purpose is accomplished by making UM coverage available for the victim's benefit as primary protection against the tortfeasor not adequately insured. Uhrich v. National Fire Ins. Co., 569 So.2d 1062 (La.App. 3 Cir. 1990), writ denied, 572 So.2d 96 (La.1991). *329 The statute is to be liberally construed such that statutory exceptions to the UM coverage are interpreted strictly. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La. 1992). The burden of proving that any named insured rejected, in writing, UM coverage equal to the bodily injury liability limits or selected lower limits is on the insurer. Id. The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Roger v. Estate of Moulton, 513 So.2d 1126, 1131-32 (La. 1987). If the rejection is unambiguous, but not in proper form, it is ineffective. Dibos v. Bill Watson Ford, 622 So.2d 677 (La. App. 4 Cir.1993).
The Supreme Court noted in Tugwell, supra, 609 So.2d at 197:
... a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. (Citations omitted.) Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, and (3) no UM coverage.

OPTIONS FOR ACCEPTANCE/REJECTION OF UM COVERAGE
Ms. James challenges the rejection executed by RTA, arguing that it does not meet statutory or jurisprudential requirements for a valid waiver because it did not offer the insured a "meaningful selection" from among the three options mandated by Tugwell. She maintains that the only option clearly offered RTA by Progressive's form was rejection of UM coverage.
The rejection form shows that the initial paragraph of the endorsement indicates that Progressive offered its insured UM coverage "with limits equal to the Bodily Injury Liability Limits" selected in the policy. The first requirement of Tugwell has been met.
Next, the fourth paragraph of the form offers the insured the option to select UM coverage "at the minimum limits required by the state financial responsibility law." The statutory minimum limits of $10,000/$20,000 are well below the bodily injury limits contained in the policy. The fifth paragraph read in conjunction with the fourth paragraph presents the insured with the opportunity to select UM options at any level above the statutory minimum it desired.
Finally, the last paragraph offered, and RTA selected, complete rejection of UM coverage.
During his oral argument, plaintiff's attorney contended that Gordon v. Southern United Fire Ins. Co., 95-2388 (La.App. 4 Cir. 8/21/96), 679 So.2d 582, requires that the insured be informed that coverage equal to bodily liability coverage is automatically written into the policy by operation of law unless it is rejected or lower limits are selected. This court imposed that requirement in Gordon only because the acceptance option in Gordon was tacit, i.e., it occurred by operation of law if UM coverage were not rejected. There was no place on the form in Gordon to elect coverage. This is valid because La. R.S. 22:1406(D)(1)(a) does not require that an acceptance of UM coverage be in writing because it can occur by operation of law, but does require a rejection to be in writing because a rejection cannot occur by operation of law. See also Bryk v. Brock, 95-0889 (La.App. 4 Cir. 10/26/95), 663 So.2d 522, 524, in which the policy has language that "unequivocally informs the insured that he need do nothing in order to secure coverage."
Gordon stands for the principle that the form need only offer a means of exercising the desired option, whether expressly in the case of rejection or tacitly in the case of acceptance. The insured in the present case was offered an option to accept the minimum limits by operation of law, as well as any limit above the minimum limit, or to reject UM coverage. This is consistent with Tugwell, supra.
Plaintiff misinterprets Gordon to require that the insured be informed that he *330 will receive coverage equal to the bodily liability coverage as required by law if he does not reject UM coverage. That is not what this court meant to imply in Gordon. In Gordon it was necessary for the selection/rejection form to explain that the insured would receive coverage if he did not reject it, i.e., tacit selection by operation of law, because there was no place on the form to accept such coverage in writing. In the instant case there is no need for the form to provide for tacit selection by operation of law because the form provides the option of explicit selection in writing.
This result is consistent with Morgan v. Sanchez, 94 0090 (La.App. 1 Cir. 4/15/94), 635 So.2d 786, in which the appellate court was satisfied with the offering of the legally required options. There is no mention in that case of the consequences of failure to reject. The same result was reached in Thomas v. Goodson, 26,356 (La.App. 2 Cir. 12/7/94), 647 So.2d 1192; and West v. Louisiana Indem. Co., 26,845 (La.App. 2 Cir. 4/5/95), 653 So.2d 194, writ denied, 95-1099 (La.6/16/95), 655 So.2d 337.
In Banks v. Patterson Ins. Co., 94-1176 (La.App. 1 Cir. 9/14/95), 664 So.2d 127, writ denied, 95-2951 (La.2/16/96), 667 So.2d 1052, the form allowed the insured to reject UM coverage but did not: (1) offer the insured the option to accept coverage; or (2) inform the insured that he would automatically be covered with the minimum limits as a matter of law if the insured did not reject coverage. Without one of the two options, the form was invalid.
In Holbrook v. Holliday, 93-1639 (La.App. 3 Cir. 6/1/94), 640 So.2d 804, writ denied 94-1735 (La.10/7/94), 644 So.2d 642, the appellate court found that issues of material fact existed based on the question of whether the policy holder knew she rejected UM coverage on not only a 1982 vehicle but also vehicles purchased as replacements for the 1982 automobile. Also, the policy holder's affidavit showed that she only signed the form but did not mark the rejection option herself but the mark was made by her agent so that the form was insufficient to establish an affirmative rejection by the insured. That court suggested options in a valid form without mentioning the consequences of failure to reject. See also Henson v. Safeco Ins. Companies, 585 So.2d 534, 539 (La.1991).
In McCoy v. State Farm Mut. Auto. Ins. Co., 95-689 (La.App. 3 Cir. 11/2/95), 664 So.2d 572, the form was invalid where it provided only two options: (1) selection of lower limits; and (2) rejection. In that case the form did not mention the consequences of failure to reject or provide for selection above lower limits.
In Herman v. Rome, 95-666 (La.App. 5 Cir. 1/17/96), 668 So.2d 1202, the form was invalid where it did not state that the failure of the applicant to reject UM coverage or select UM limits lower than that provided for bodily injury would result in UM coverage being provided at the bodily injury limits. In that case the applicant was provided only with the options of UM limits lower than the bodily injury liability limit or rejection of UM coverage. In the present case the applicant was offered three options: (1) to accept at the minimum amount provided by law; (2) to accept UM coverage "at the following increased limits: ____________," i.e., any amount above the minimum required by law; and (3) the option to reject UM coverage. Further the paragraphs preceding the options inform the applicant that he is offered UM coverage with limits equal to the bodily injury liability limits which the applicant selected, and that the endorsement applies to that policy and all future renewals unless otherwise directed in writing. The form constitutes a valid waiver, without informing the applicant of the consequences of a rejection of UM coverage.
In Fontenot v. Henderson, 95-2784 (La.App. 4 Cir. 2/15/96), 670 So.2d 489, this court found that the form was invalid where the applicant had two options: (1) to select UM coverage with inserted lower limits, or (2) to reject UM coverage. In the present case plaintiff's argues that the UM options did not include an offer to select UM coverage at the same amount as the bodily injury limits. However, in the present case the applicant had the option to accept UM coverage at any increased limits above the minimum required by law.
*331 In the present case Progressive's form comports with statutory and jurisprudential requirements for a valid waiver of UM coverage as a matter of law.

TYPE-WRITTEN REJECTION
Ms. James also contends that the rejection is invalid because the means employed to signify choice of rejection was type-written, not handwritten by Mr. Reese. Moreover, Ms. James argues the trial court erred in considering Progressive's insured's affidavit as curative of the form's defect and cites Thomason v. City of New Orleans, 94-1508 (La.App. 4 Cir. 2/23/95), 650 So.2d 1247.
Aside from not citing any authority mandating a handwritten mark as opposed to a typewritten selection, Ms. James does not consider the contents of Mr. Reese's affidavit. He specifically attests: "That the Secretary for RTA, under instructions from the Board of RTA, marked the box on the Uninsured Motorists Endorsement form rejecting all UM coverage." As for the trial court's consideration of Mr. Reese's affidavit, Ms. James' reliance on Thomason, supra, is misplaced. In Thomason the rejection form did not specifically state or imply that the insured had the option of selecting UM limits less than or lower than the limits of the auto liability policy. The Thomason court concluded that an affidavit could not supply validity to a rejection form that was invalid under the UM statute. The form in this case does not suffer the Thomason deficiencies.

TIMELY REJECTION
Finally, Ms. James argues that the rejection is invalid because it was not executed until approximately two months after the policy was issued. She cites Futch v. Commercial Union Ins. Co., 625 So.2d 1019 (La. 1993), as authority for her position that a waiver of UM coverage executed after issuance of the policy cannot alter an existing policy.
Ms. James mistakenly seizes dictum from Futch and attempts to apply it as the ruling of the court. In reading Futch it is apparent the court was not making a specific ruling regarding the timeliness of the UM rejection in that case. In fact, two concurring opinions in Futch noted as unnecessary dictum, the author's reference to the validity of the UM waiver. The other concurring and dissenting opinions do not reach that issue. The issue of the timeliness of the rejection was not before the court. Moreover, the Futch rejection was executed "midway into the policy period." The declaration sheet issued with the policy in this case indicates a policy period from April 1, 1989 to April 1, 1992.
In the present case Mr. Reese's affidavit shows that customarily it was RTA's routine policy to reject UM coverage. Mr. Reese had the authority and the experience in the law and in RTA's routine policy to make a valid informed knowledgeable rejection of UM coverage on behalf of RTA. The rejection signed on June 16, 1989, two months after inception of a three year policy, became effective as of the date it was executed. The execution of the rejection preceded the accident that occurred on February 14, 1992. The rejection of UM coverage is valid with regard to any claim that arose subsequent thereto.
Accordingly, the ruling of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Now Cynthia Delay.
[2] In Southern American Ins. Co. v. Dobson, 441 So.2d 1185 (La.1983), the Louisiana Supreme Court ruled that commercial excess/umbrella liability policies were governed by the requirements of the UM statute, La. R.S. 22:1406.