I, ARMSTRONG, Judge.
This is an automobile collision personal injury case. The issue in this appeal is whether the plaintiffs employer effectively rejected uninsured motorisVunderinsured motorist (“UM”) coverage. The trial court granted summary judgment for the insurer. We affirm.
Plaintiff-appellant Joseph Boyd was injured in an automobile accident while he was a passenger in a vehicle which was leased to "his employer, SOLOCO, Inc. (“SOLOCO”), which was insured under a policy issued by the Gray Insurance Company (“Gray”). The policy provided coverage to Newpark Resources, Inc. (“Newpark”) and a number of affiliates of Newpark which included SOLOCO. The SOLOCO vehicle collided with a vehicle driven by Raymond Schroeder, Jr. and insured by United Services Automobile Association (“USAA”). Mr. Boyd sued Mr. Schroeder for negligence, USAA as the liability insurer of Mr. Schroeder, and Gray as UM insurer.
Gray moved for summary judgment on the ground that Newpark had rejected UM coverage. Mr. Boyd moved for summary judgment on the ground that New-park had not effectively rejected UM coverage. The trial court granted Gray’s motion for summary | ¿judgment, denied Mr. Boyd’s motion for summary judg- *674 merit, and dismissed the suit against Gray. Mr. Boyd, Mr. Schroeder and USAA appeal.
■ Summary judgment should be granted if, but only if, there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. Code Civ.Proc. art. 966. When there is no genuine issue of material fact, issues of whether UM coverage has been effectively rejected can be decided by summary judgment. See Lefeaux v. Taylor, 97-0332 (La.App. 4 Cir. 9/24/97), 700 So.2d 1027, 1028; Moyles v. Cruz, 96-0307, 96-0308 (La.App. 4 Cir. 10/16/96), 682 So.2d 326, 328. In the present case, the material facts are not in dispute, which is reflected by the fact that both Mr. Boyd and Gray moved for summary judgment, because the specific dispute is simply whether the UM coverage rejection form signed on behalf of New-park (and SOLOCO) was adequate as a matter of law to reject. UM coverage.
Unless effectively 'rejected by the insured, UM coverage in the amount of the bodily injury coverage is “read into” automobile liability insurance policies. E.g. Moyles v. Cruz, 96-0307, 96-0308 (La.App. 4 Cir. 10/16/96), 682 So.2d 326,. 327. See La.R.S. 22:1406(D)(1)(a)1. In the present case, there were two liability policies issued to Newpark/SOLOCO by Gray. Each of the two policies had a three year policy period commencing January 1, 1995. As to each policy, Newpark/SOLOCO, on February 1, 1995, signed a form rejecting UM coverage. The accident involved in this case occurred almost three months later on April 27, 1995. Copies of the two UM coverage rejection forms, which were the first pages of Exhibit B and Exhibit C to Gray’s motion for summary judgment, are attached hereto as an appendix.
LMr. Boyd’s first argument on appeal is that the rejection of UM coverage was not effective because the UM coverage rejection forms were signed a month after the commencement of the policy coverage period. As Mr. Boyd’s brief acknowledges, this court previously has held that a form rejecting UM coverage is not defective simply because it is signed some time after the insurance policy was issued. Moyles v. Cruz, 96-0307, 96-0308 (La.App. 4 Cir. 10/16/96), 682 So.2d 326, 331. Mr. Boyd points out that the First Circuit has held otherwise. Henderson v. Maloid, 96-0285, 96-0286 (La.App. 1 Cir. 11/8/96), 683 So.2d 342, 346, unit denied, 96-2901 (La.1/24/97), 686 So.2d 866. However, we are bound by our decision in Moyles. Moreover, we note that the Second Circuit and the Third Circuit have ruled in accord with our Moyles decision. See White v. Shoalmire, 30,158 (La.App. 2 Cir. 1/21/98), 706 So.2d 588, 590 (collecting cases). Thus, the form rejecting UM coverage in the present case was not defective simply because it was signed a month after the policy was issued.
Mr. Boyd’s second argument on appeal is that the form rejecting UM coverage in the present case is defective because it is “retroactive” in that it was signed February!, 1995 but stated that UM coverage was rejected as of January 1, 1995. Mr. Boyd relies upon Washington v. Savoie, 92-2957 (La.4/11/94), 634 So.2d 1176. In Washington, the policy coverage period commenced November 15, 1984 and the UM coverage rejection form stated that UM coverage was rejected as of November 15, 1985 (i.e. one year later). The Washington plaintiffs, who alleged that there was UM coverage, were injured during the policy period but prior to November 15, 1985. The insurer in Washington claimed that the effective date of UM | coverage rejected shown in the UM coverage rejetion form, November 15, 1985, was a typographical error and was supposed to have been November 15, 1984. The insurer sought to correct, or reform, the UM coverage rejection form so as to defeat UM coverage. The Supreme Court held that, where the plaintiffs’ injuries occurred pri- or to the attempted correction or reformation, the correction or reformation could not. be used to defeat UM coverage for those injuries. 634 So.2d at 1180. While *675 the Supreme Court did not expressly say that the result would have been different if the plaintiffs’ injuries had occurred after the correction or reformation of the UM coverage rejection form, the key discussion in the Washington opinion does put considerable emphasis on the fact that the plaintiffs were injured both prior to the November 15, 1985 effective date in the UM coverage rejection form and prior to the insurer’s attempt to correct or reform the UM coverage rejection form.
In the present case, in contrast, Mr. Boyd was injured April 27, 1995 and the UM coverage rejection form was signed almost three months earlier, on February 1,1995. Regardless of whether UM coverage rejection was effective retroactively to January 1, 1995, or effective only as of February 1, 1995, it was effective prior to Mr. Boyd’s injury. See Moyles v. Cruz, 96-0307, 96-0308 (La.App. 4 Cir. 10/16/96), 682 So.2d 326, 331 (“The rejection of UM coverage is valid with regard to any claim that arose subsequent thereto.”). We need n.ot, and therefore do not, express any opinion on what would be the effectiveness of the UM coverage rejection if Mr. Boyd had been injured on or after January 1, 1995 but prior to February 1, 1995. Under the sequence of events that occurred in this case, the UM coverage rejection form was not defective simply | .¡because it was signed February 1, 1995 and stated that UM coverage was rejected as of January 1,1995.
Mr. Boyd’s third argument on appeal, which is joined in by Mr. Schroeder and USAA, is that Gray’s UM coverage rejection form failed to provide the insured, Newpark/SOLOCO, with all of the UM coverage options required by law. The insurer must give the insured the opportunity to select among any of three options which are: (1) UM coverage equal in amount to the amount of bodily injury insurance coverage; (2) UM coverage in an amount less than the amount of bodily injury insurance coverage; or (3) no UM coverage at all. E.g., Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213, 1215; Lefeaux v. Taylor, 97-0332 (La.App. 4 Cir. 9/24/97), 700 So.2d 1027, 1028-29.
Specifically, the appellants argue that the bold-face block capital captions and warnings on the forms are misleading in that they indicate that there are only two options: to decline UM coverage altogether or to reducé UM coverage to less than the full amount of bodily injury 'coverage. Thus, the appellants argue, the Gray form effectively' forecloses the option of UM coverage in the full amount of the bodily injury coverage. In further support of their position, the appellants assert that Gray’s form does not inform the insured that, if the insured does not sign the form at all, then the insured will have UM coverage in the amount of the bodily injury coverage. Before analyzing Gray’s form, we note the Supreme Court has set , standards for deciding the effectiveness of UM coverage rejection forms:
I «In 1987, La.R.S. 22:1406D was amended to require that any rejection or selection of lower limits shall be made only “on a form designed by each insurer.” Implicit in the legislature’s direction to insurers to design a form, was the responsibility to design a form that would fairly efféctuate the intent of the law. The legislature did not mandate that the form be designed in any particular way, nor did it indicate that any particular language was sacrosanct. The legislature had to have anticipated that various insurers might go about the design of the necessary form in different ways. Moreover, as in any case where the same type of document is drafted separately by multiple authors, it is to be expected that some forms will be better than others. Had the legislature believed that only one format'was acceptable or that only certain words or phrases could be used, it would have included the required format in the statute. It did not do so. Thus, the question before us is not whether the form used by Louisiana Indemnity was the *676 best form that anyone could possibly devise. Rather, the question before us is whether the form designed and used by Louisiana Indemnity was adequate for the purpose intended by the legislature.
% s-j # :¡:
In Tugwell, we noted that the task of informing the applicant of available options can be accomplished in several ways. It is not the job of the courts to draft insurance forms or to dictate the exact format or wording which must be used for a valid rejection of the mandated UM coverage. The legislature specifically left that task to the insurers.
Daigle v. Authement, 96-1662 (4/8/97), 691 So.2d 1213, 1214-15, 1216. Accord Lefeaux v. Taylor, 97-0332 (La.App. 4 Cir. 9/24/97), 700 So.2d 1027, 1030.
We believe that, when Gray’s UM coverage rejection form is read as a whole, it is clear enough to be legally effective. Gray’s form has blanks for the insured to choose among four options which include all three of the options required by law. Also, above the blanks is an explanation of the consequence of selecting each of the options. We do not think that the caption and warnings make the form as a whole misleading. Rather, we believe that a reasonable person who reads the whole form will understand the available options.
|7Also, Gray’s form does inform the insured that the insured has UM coverage if the form is not signed at all. Immediately above the four blanks from which the insured is to make its selection, the form states: “If you wish to revise the coverage you presently have, you must sign.... ” (emphasis added). The clear import is that the insured already has coverage and that such coverage will be affected only if the insured signs the form. Also, the block capital bold face warning states that “you are purchasing uninsured motorist coverage limits less than your bodily injury liability when you sign this form.” (emphasis added). The clear import is that, if the insured does not sign the form, then the insured is purchasing UM coverage in the amount of the bodily injury liability coverage limits.
The question is not whether the form is perfect or whether a better form could be drafted. The question is whether the form is good enough. Gray’s form is good enough.
For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.

*677 APPENDIX
OPTION TO REJECT OR MODIFY UNINSURED MOTORIST COVERAGE UNDER POLICY NUMBER XSAL-072329
YOU ARE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY OR YOU ARE PURCHASING UNINSURED MOTORIST LIMITS LESS THAN YOUR BODILY INJURY LIABILITY WHEN YOU SIGN THIS FORM. PLEASE READ CAREFULLY.
To reject uninsured motorist coverage, fill in item 1 and sign this form. To decrease the limits of your uninsured motorist coverage, fill in Item 2 and sign this form. To increase the limits of your uninsured motorist coverage, fill in item 3 and sign this form. To add uninsured motorists coverage, fill in item 4 and sign this form.
Uninsured Motorist Coverage provides coverage for insured persons who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death which results from any of these. For the purpose of this coverage, an uninsured motor vehicle may include a motor vehicle as to which the bodily injury limits are less than your damages.
If you wish to revise the coverage you presently have, you must complete and sign this form and return it to your agent.
[[Image here]]
*678 9
OPTION TO REJECT OR MODIFY UNINSURED MOTORIST COVERAGE UNDER POLICY NUMBER GXS-040756
YOU ARE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY OR YOU ARE PURCHASING UNINSURED MOTORIST LIMITS LESS THAN YOUR BODILY INJURY LIABILITY WHEN YOU SIGN THIS FORM. PLEASE READ CAREFULLY.
To reject uninsured motorist coverage, till in item 1 and sign this form. To decrease the limits of your uninsured motorist coverage, fill in item 2 and sign this form. To increase the limits of your uninsured motorist coverage, fill in item 3 and sign this form. To add uninsured motorists coverage, fill in item 4 and sign this form.
Uninsured Motorist Coverage provides coverage for insured persons who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death which results from any of these. For the purpose of this coverage, an uninsured motor vehicle may include a motor vehicle as to which the bodily injury limits are less than your damages.
If you wish to revise the coverage you presently, have, you must.complete and sign this form and return it to your agent.
[[Image here]]