ROLAND L. BELSOME, Judge.
| iThis appeal is taken from the trial court’s grant of a summary judgment in favor of OneBeacon America Insurance Company and OneBeacon Insurance Company (collectively OneBeacon) annulling a settlement agreement between Eagle, Inc. (Eagle) and United States Fidelity and Guaranty Company (USF & G). For the following reasons we reverse the trial court’s judgment.
OneBeacon, as the insurer of Eagle, is a named defendant in the underlying asbestos exposure lawsuit. Pearson Long filed a petition for damages against his employers and various manufacturers of asbestos containing products alleging asbestos exposure from 1958 to 1979. During the years of alleged exposure, OneBeacon issued several primary Comprehensive General Liability (CGL) policies of insurance to Eagle. USF & G issued the primary CGL policies to Eagle from 1977 to 1980.
The coverage in the CGL policies issued by OneBeacon and USF & G to Eagle provided for defense costs.[1] OneBeacon and USF & G shared in the defense 12costs of this litigation until USF & G notified OneBeacon that all funds associated with the policies issued to Eagle had been exhausted and USF & G was no longer obligated to pay costs and expenses for Eagle’s defense. That assertion was based on the terms and conditions agreed upon by USF & G and Eagle in a 2003 Settlement Agreement. Subsequent to USF & G’s withdrawal from participating in Eagle’s defense, OneBeacon filed a third party demand against USF & G[2] seeking to have the trial court declare that USF & G was obligated to pay its share of the *970 defense costs and for reimbursement of expenses expended on USF & G’s behalf.
In its answer to the third party demand, USF & G offered the Settlement Agreement as a defense to the claims asserted by OneBeacon. OneBeacon responded by filing a motion for summary judgment seeking to void the effects of the Settlement Agreement and order USF & G to participate in its pro rata share of Eagle’s defense costs. USF & G’s opposition was in the form of a cross-motion for summary judgment requesting that the trial court find the Settlement Agreement relieves USF & G of any obligation for Eagle’s past, present, or future defense costs.
After hearing oral argument and taking the matter under advisement, the trial court rendered judgment in favor of One-Beacon, granting its motion for summary judgment. According to the trial court’s judgment, it concluded that pursuant to La. R.S. 22:1262 and Washington v. Savoie,[3] the Settlement Agreement violated Louisiana law. USF & G appeals that judgment.
|3On appeal, this Court reviews the granting of a motion for summary judgment de novo.
The trial court relied on Washington v. Savoie and La. R.S. 22:1262 as grounds to annul the Settlement Agreement between USF & G and Eagle. In Washington, the Louisiana Supreme Court discussed Louisiana’s law and public policy relating to the reformation of insurance policies, when the reformation adversely affects a tort victim. The Court recognized that Louisiana law allows for reformation of an insurance contract to correct a mistake within the policy so that the mutual intent of the insurer and insured are reflected. However, based on the facts of Washington, the Court found that Louisiana’s public policy broadly precludes post-injury contract reformation — even for mutual mistake — when reformation would prejudice an injured third party.[4]
The Fruge v. Amerisure case discussed the application of Washington, under factually similar circumstances.[5] In the Fruge case, a drilling accident injured the plaintiff. The company that was allegedly responsible for the incident, Ulterra MWD (MWD), was covered by a CGL insurance policy issued by Chubb. In addition to that policy, MWD was named as an insured on a CGL insurance policy issued by Amerisure to Ulterra Drilling Technologies.[6]
Subsequent to the filing of suit against MWD, Chubb and Amerisure' assumed the company’s defense. At some point thereafter, Amerisure issued two policy change forms deleting MWD as a named insured, asserting that the addition |4of MWD’s name on the policy was a clerical error. Amerisure withdrew from MWD’s defense. Chubb filed a cross-claim against Ameri-sure seeking, among other things, a declaration of Amerisure’s obligation and duty to defend as per the CGL policy. Ameri-sure filed a motion for summary judgment on the grounds that there was no valid insurance contract and Chubb did not have standing to compel Amerisure to defend MWD. Chubb was successful on its cross-claim and Amerisure’s ■ motion for sum *971 mary judgment was denied in the district court. Amerisure appealed to the Fifth Circuit.[7]
The district court in Fruge, like the trial court in the instant case, relied on Washington and La. R.S. 22:1262 to conclude that Louisiana law and public policy does not allow for post-accident reformation of insurance policies. On appeal, the Fifth Circuit found that the district court erred by applying the Washington holding to the facts of Fruge. The Court held that Louisiana law does not disallow all post-accident reformation,[8] and because the third party seeking coverage in Fruge was an insurance company, not a tort victim, the reformation would not be barred.[9]
We find the analysis' is Fruge persuasive and supportive of USF & G’s position. In this case, OneBeacon argues that the Settlement Agreement is analogous to a reformation of the insurance policy. Assuming that the Settlement Agreement can be characterized as a reformation of the original insurance policy between Eagle and USF & G, we find the instant case to be distinguishable from Washington. Like in Fruge, the party challenging the Settlement Agreement in this case is not the injured tort victim. The third party attempting to assert rights here is Ran insurance company that contracted with Eagle for coverage, including the duty to defend without consideration of other policies. For that reason, we cannot extend the public policy protections in Washington to this matter. However, it is worth noting that had Pearson Long challenged' the Settlement Agreement under Washington, our finding may be different.
The trial court also supported its decision by citing to La. R.S. 22:1262, which provides:
No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and insured after the occurrence of any such injury, death, or damage for which the insured may be liable, and any such annulment attempted shall be null and void.
The plain language of La. R.S. 22:1262 prohibits insurers and insureds from retroactively rescinding or annulling policy contracts by agreement post-occurrence. The Fruge court also addressed the applicability of this statute to reformation actions suggesting that the statute is irrelevant to reformation actions. We disagree. Given that the statute relates to post-occurrence annulment of coverage, there may be reformation actions that would factually support the application of this statute.[10] However, the issue currently before this Court is whether the Settlement Agreement between USF & G and Eagle violated La. R.S. 22:1262.
USF & G’s duty to defend and pay defense costs is a contractual obligation owed to Eagle. In response to a suit on coverage between those parties, Eagle 16agreed to the terms and conditions of the Settlement Agreement. A condition of the Settlement Agreement was that once the designated sum of funds allocated to paying claims was exhausted, USF & G would no longer be responsible for defense costs. Essentially, Eagle is left uninsured for defense costs related to the years that USF & G’s policies provided coverage.
The explicit language of La. R.S. 22:1262 indicates that its purpose is to prevent *972 insurers and insureds from agreeing to annul .or rescind contracts to the detriment of an injured third party. Similar to the Washington holding, the focus of the statute is to protect third party tort victims, not insurance companies that contracted to cover a particular risk. Simply put, the protections set forth in Washington and La. R.S. 22:1262 do not apply to OneBea-con. Again, if Pearson Long was challenging the Settlement Agreement pursuant to the provisions of this statute, this Court’s opinion may differ.
Accordingly, under these principles of law, we do not find that OneBeacon can have the Settlement Agreement between USF & G and Eagle declared null and void. Therefore, the ruling of the trial court is reversed.
REVERSED-

. The law provides for defense costs to be shared pro rata among the insurers based on policy periods.

. USF & G was not a named party in the Petition for Damages.

. 634 So.2d 1176 (La. 1994).

. In Washington, the insurer sought to correct a clerical error that changed the effective date of an uninsured motorist rejection form. The correction would adversely affect three injured plaintiffs that had been involved in accidents caused by uninsured motorists.

. 663 F.3d 743 (5th Cir.2011).

. Ulterra Drilling Technologies and Ulterra MWD were both owned by Rockbit Holdings. Ulterra Drilling Technologies was initially named as a defendant in the suit brought by Mr. Fruge, but was dismissed.

. Id.

. See Samuels v. State Farm Mut. Auto. Ins. Co., 06-0034 (La.10/17/06), 939 So.2d 1235.

. Id.

. cf. Washington, supra.