| | | |
|---|---|---|
| **NELCOME J. COURVILLE, JR., ET AL** | * | **NO. 2019-C-0902** |
| | * | |
| **VERSUS** | * | **COURT OF APPEAL** |
| | * | |
| **LAMORAK INSURANCE COMPANY, ET AL** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-01117, DIVISION "B-1"
Honorable Rachael Johnson
* * * * * *
**Judge Roland L. Belsome**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Regina Bartholomew-Woods, Judge Dale N. Atkins)

**Bartholomew-Woods, J., Concurs in the Result**

Gerolyn P. Roussel
Perry J. Roussel, Jr.
Jonathan B. Clement
Lauren R. Clement
Benjamin P. Dinehart
ROUSSEL & CLEMENT
1550 West Causeway Approach
Mandeville, LA 70068

      COUNSEL FOR PLAINTIFFS/RELATORS

H. Minor Pipes, III
Stephen Miles
PIPES MILES BECKMAN, LLC
1100 Poydras Street, Suite 1800
New Orleans, LA 70163

Robert A. Kole
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110

      COUNSEL FOR DEFENDANT/RESPONDENT

**WRIT GRANTED; JUDGMENT REVERSED**
**October 21, 2019**

This emergency writ application is taken from the trial court's October 15, 2019 judgment granting a motion for summary judgment, which dismissed claims against Liberty Mutual Insurance Company. Relators seek immediate review of that ruling due to the impending trial date of November 4, 2019. For the reasons that follow, the writ is granted and the trial court's judgment is reversed.

Nelcome Courville filed suit against multiple defendants for asbestos exposure. That exposure over many years resulted in Mr. Courville contracting mesothelioma. Mr. Courville died as a result of his mesothelioma. Thereafter, his wife and children ("Relators") substituted themselves as plaintiffs asserting survival and wrongful death claims. Reilly-Benton Company, Inc. ("Reilly-Benton") was a named defendant in the suit. In October of 2017, Reilly-Benton filed a Voluntary Petition for Bankruptcy. Thereafter, Relators supplemented and amended their petition to name Liberty Mutual Insurance Company ("Liberty Mutual") as a direct defendant pursuant to La. R.S. 22:1269 for the liability of Reilly-Benton.

Later, Liberty Mutual filed a Motion for Summary Judgment contending that a 2013 Settlement Agreement between Liberty Mutual and Reilly-Benton, resolving alleged coverage disputes, prevented the Relators from recovering damages from Liberty Mutual. The trial court agreed, granted the summary judgment, and dismissed the claims against Liberty Mutual with prejudice. This writ application followed.

The issue before this Court is whether a 2013 Settlement Agreement ("Settlement Agreement"), between Liberty Mutual and Reilly-Benton, can limit Liberty Mutual's liability to Mr. Courville for asbestos exposure that occurred in the 1960s and 1970s.

This Court has addressed a similar scenario in *Long v. Eagle*, 2014-0889 (La.App. 4 Cir. 2/25/15), 158 So.3d 968, which was also an asbestos exposure lawsuit. In *Long*, the plaintiff named defendant, Eagle Asbestos & Packing Company, Inc. ("Eagle") and one of its commercial general liability (CGL) insurers, OneBeacon, as defendants. OneBeacon brought a third-party claim against another CGL insurer, United States Fidelity and Guaranty Company (USF&G) seeking a declaration that the second CGL insurer was obligated to pay its share of defense costs and for reimbursement of expenses expended on the second insurer's behalf. *Id.*

The exposure alleged in *Long* spanned from 1958 to 1979. During that timeframe, OneBeacon and USF&G had multiple years where they issued the primary CGL policy to Eagle. *Id.* 2014-0889, p. 1, 158 So.3d at 969. In 2003, Eagle and USF&G entered into a settlement agreement that resolved coverage disputes, including coverage for USF&G's pro-rata share of defense costs. *Id.* 2014-0889, p. 2, 158 So.3d at 969-70. USF&G asserted the settlement agreement

2

as a defense to OneBeacon's claim against them.  Then, OneBeacon filed a motion for summary judgment claiming that the Settlement Agreement was void under La. R.S. 22:1262.  The trial court granted the motion for summary judgment, USF&G appealed that ruling, and this Court reversed the trial court. In so doing, this Court found that the public policy protections discussed in *Washington v. Savoie*, 634 So.2d 1176 (La. 1994) and the mandates of La. R.S. 22:1262 were not intended to protect other insurers. *Id.* 2014-0889, p. 4-6, 158 So.3d at 971-72.   At the same time, this Court explicitly stated that if the party seeking to challenge the settlement agreement was an injured plaintiff the Court's analysis would be different.  *Id.*

In the instant case, tort victims are seeking to challenge this Settlement Agreement.  Thus, this Court must determine the applicability of *Washington* and La. R.S. 22:1262 under the given circumstances.  The Louisiana Supreme Court's opinion in *Washington* examined the law and public policy as it relates to the reformation of insurance policies, specifically when the reformation adversely affects a tort victim.[1]   That Court acknowledged that reformation of an insurance contract to correct a mistake within a policy is not prohibited.  However, when reformation would prejudice an injured third party, Louisiana's public policy precludes post-injury contract reformation of any kind.  *Washington*, 634 So.2d at 1180.  Therefore, applying Louisiana's public policy law as set forth in *Washington* to this case, a CGL insurer that provided unlimited coverage under a policy of insurance would be barred from any post-injury settlement to limit that liability.

---

[1] The *Washington* plaintiffs were injured in separate vehicular accidents caused by uninsured motorists.  It was determined that their employer and the employer's insurer changed the effective date of UM coverage, after the plaintiffs were injured, to prevent recovery.

3

Further, if we consider the statute that specifically addresses the annulment of liability policies, La. R.S. 1262, it provides:

> No insurance contract insuring against loss or damage through legal liability for the bodily injury or death by accident of any individual, or for damage to the property of any person, shall be retroactively annulled by any agreement between the insurer and insured after the occurrence of any such injury, death, or damage for which the insured may be liable, and any such annulment attempted shall be null and void.

The plain language of the statute is clear; insurers and insured cannot retroactively rescind or annul policy contracts by agreement post-occurrence. The 2013 Settlement Agreement at issue in this case essentially rescinded or annulled policy contracts for injuries that were sustained decades ago. That Settlement Agreement undoubtedly violates the statute. Accordingly, the Settlement Agreement should be considered null and void as to third-party tort victims.

Accordingly, whether this Court reviews the Settlement Agreement as a reformation of the insurance contract post-occurrence or as an annulment of the contract post-occurrence, it cannot be enforceable against third-party tort victims. For these reasons, the trial court's judgment is reversed.

**WRIT GRANTED; JUDGMENT REVERSED**