683 So.2d 342 (1996)
Ginger Guillot HENDERSON, et al.
v.
Tracy MALOID, et al.
Barbara H. OLIVER, et al.
v.
Tracy MALOID et al.
Nos. 96 CA 0285, 96 CA 0286.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
Writ Denied January 24, 1997.
*343 Charles H. Braud, Jr., Baton Rouge, for Plaintiff/Appellant Barbara Oliver, Greg Oliver and Michael Oliver.
Randy P. Zinna, Baton Rouge, for Plaintiff/Appellant Ginger Guillot Henderson, et al.
Elizabeth Guglielmo, Lafayette, for Defendant/Appellee Louisiana Insurance Guaranty Association.
Before WATKINS, KUHN and GUIDRY[1], JJ.
KUHN, Judge.
This is an appeal of the trial court's dismissal, by summary judgment, of plaintiffs' claims asserting coverage under a commercial automobile garage coverage liability policy. We reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND
On September 27, 1989, Vernon Oliver was driving a 1990 Lexus on Airline Highway in Baton Rouge, accompanied by a guest passenger, Glenn Henderson. Allegedly, a stolen Chevrolet pick-up driven by a minor, Tracy Maloid, was being pursued by law enforcement authorities when it ran the red light for South Choctaw traffic at a high rate of speed and collided into the Lexus. As a result of the accident, both Oliver and Henderson died.
Oliver's wife and children and Henderson's wife and children filed separate lawsuits seeking damages for wrongful death, naming numerous defendants,[2] including Maloid[3] and Pelican State Mutual Insurance Company ("Pelican"), the alleged uninsured/underinsured motorist ("UM") insurer for Vernon Oliver. Subsequently, Pelican was declared insolvent and plaintiffs amended their petitions to add Louisiana Insurance Guaranty Association ("LIGA") as a defendant.[4]
LIGA filed motions for summary judgment in each lawsuit, asserting Pelican did not provide coverage to Vernon Oliver and, therefore, it was entitled to judgment as a matter of law. The trial court ordered the consolidation of the two lawsuits for purposes of a joint hearing on the motion. On May 22, 1995, the trial court granted summary judgment on behalf of LIGA and dismissed plaintiffs' claims against LIGA. From the judgment, signed June 26, 1995, plaintiffs appeal raising the following issues:
(1) Whether the commercial automobile garage policy issued by Pelican provided UM coverage in this case; and
(2) Whether the vehicle driven by Oliver was a covered auto under the commercial automobile garage policy issued by Pelican.

MOTION FOR SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that *344 govern the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Prior to 1996 La. Acts, First Extraordinary Session, No. 9, which amended La. C.C.P. art. 966, summary judgments were not favored, and all doubt concerning a dispute as to a material issue of fact was resolved against granting the motion for summary judgment and in favor of a trial on the merits. See Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). However, as amended, La. C.C.P. art. 966 now provides in pertinent part, "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." As this legislation is procedural in nature, it must be applied retroactively, as well as, prospectively. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir. 8/21/96), 679 So.2d 477; See also La. C.C. art. 6; Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992). Nevertheless, the amendments to C.C.P. art. 966 do not effect a change in the burden of proof, as specified in Paragraph (G): "Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover." See also Short v. Giffin, 96-0361, p. 3 (La.App. 4th Cir. 8/21/96), 682 So.2d 249; Walker v. Kroop, 96-0618, p. 4 (La.App. 4th Cir. 7/24/96), 678 So.2d 580, 583. Thus, prior jurisprudence on the issue of a mover's burden of proof on motions for summary judgment applies to the amended version of La. C.C. P. art. 966.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson, 574 So.2d at 384. The initial determination, on a motion for summary judgment, is whether the supporting documents presented by the moving party are sufficient to resolve all material issues of fact; if they are not sufficient, summary judgment should be denied. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 28 (La.7/5/94), 639 So.2d 730, 752. To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1154 (La.1983). In making this determination, the mover's supporting documents must be closely scrutinized and the non-mover's indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Since the moving party bears the burden of proving the lack of a material issue of fact, where the court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Schroeder, 591 So.2d at 345; Thompson v. South Central Bell Telephone Co., 411 So.2d 26, 28 (La.1982). It is only if the court determines that the moving party has met this onerous burden that the burden of proof shifts to the opposing party to present evidence that a material fact is still at issue; only at this point may the adverse party no longer rest on the allegations contained in his or her pleadings. Robertson, 574 So.2d at 384.
The court should not seek to determine whether it is likely that the mover will prevail on the merits, but rather whether there is an issue of material fact. Insley v. Titan Ins. Co., 589 So.2d 10, 13 (La.App. 1st Cir.1991); Good v. Fisk, 524 So.2d 203, 205 (La.App. 4th Cir.1988). A fact is material if it is essential to plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not recover. Roadrunner Motor Rebuilders, Inc. v. Ryan, 603 So.2d 214, 218 (La.App. 1st Cir.1992). Consequently, we must look to the applicable substantive law to determine whether a particular fact in dispute is material. Sun Belt Constructors, Div. MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).

*345 Uninsured/Underinsured Motorist Coverage
Although the trial court did not express the basis for granting LIGA's motion for summary judgment, a valid waiver of UM coverage by the insured would support the trial court's determination. Thus, we initially address the assertion by LIGA that the commercial automobile garage policy issued to Vernon Oliver's employer, Auto Credit, did not provide coverage to plaintiffs for their damages because the insured had expressly rejected UM coverage.
At the time the form for the Auto Credit policy was signed, La. R.S. 22:1406 D(1)(a)(i) provided as follows:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under the provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.
The object of the UM statute is to provide full recovery for the innocent automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992); Johnson v. Allstate Ins. Co., 95-1953, p. 4 (La.App. 1st Cir. 5/10/96); 673 So.2d 345, 347, writ denied, 96-1292 (La.6/28/96), 675 So.2d 1126. The statute provides that UM coverage may be specifically rejected in writing. Although the statute is to be liberally construed, exceptions to the mandatory UM coverage are to be strictly interpreted. Tugwell, 609 So.2d at 197; Johnson, 673 So.2d at 347. The insurer bears the burden of proving the insured executed a valid rejection of UM coverage. Tugwell, 609 So.2d at 197; Johnson, 673 So.2d at 347.
An examination of the pleadings and exhibits entered into evidence at the hearing on the motion for summary judgment reveals the 1990 Lexus which Vernon Oliver was driving had been acquired from Texas approximately two weeks before the accident. The vehicle still had a temporary license tag from Texas. Plaintiffs assert a commercial automobile garage policy issued to Auto Credit, Oliver's employer, provided coverage for the Lexus. The policy was obtained through Huval Insurance Group in the name of Auto Credit. An application, dated November 16, 1988, was signed by Vernon Oliver, and the policy went into effect on January 1, 1989.
According to the deposition of Vernon's wife, Barbara Oliver, Vernon worked for Auto Credit, and although Vernon was integral to the dealership's operations, Auto Credit was a sole proprietorship registered under the name of Barbara Oliver d/b/a Auto Credit. Her husband used the Lexus in connection with the business of Auto Credit. Vernon placed the commercial automobile garage coverage policy on behalf of Auto Credit with the Huval agency out of New Iberia. She testified that Vernon "always" took care of insurance matters for Auto Credit. It is clear from her deposition that she deferred the specific decisions regarding insurance coverage for Auto Credit to her late husband. She testified that she never discussed the Pelican policy with Vernon and acknowledged that with respect to the policy placed with the Huval agency, Vernon was acting as *346 a "manager" for Auto Credit and had her authority to do so.
The deposition testimony of Michael Huval, manager of the Huval Insurance Group, was also introduced into evidence. Huval recalled that Vernon Oliver had responded to a solicitation program directed to owners of car dealerships in the fall of 1988. Oliver returned a solicitation card requesting information on premiums for garage liability and dealer's physical damage coverage on behalf of Auto Credit. Huval did not recall Vernon Oliver specifically, and testified solely to the ordinary operational procedure of his agency and the contents of the agency's file for Auto Credit. Based on the solicitation card the agency received from Auto Credit and Huval's return letter, Huval concluded he must have initially spoken with Mike Oliver, Vernon's son who also worked at Auto Credit. Attached to Huval's return letter to Auto Credit was a blank application with red "x" marks indicating where someone from Auto Credit needed to sign if they wanted to submit an application. Huval testified that a signed application was received by mail. The document was silent as to whether Auto Credit wanted to select or reject UM coverage, although the section providing for UM coverage was signed by Vernon Oliver.[5]
Also introduced into evidence was the deposition testimony of Priscilla Hulin, the employee of Huval Insurance who had processed the Auto Credit policy. She explained that processing a policy required that she submit the application attached to the actual policy and the quote sheet to Pelican. Hulin testified that, in this instance, when the company copy of the application went to Pelican, Pelican noticed the UM coverage section had been signed but the option indicating the insured's selection had not been marked. Although the Auto Credit commercial automobile garage policy had gone into effect on January 1, 1989, it was not until March 3, 1989, that Pelican notified Huval Insurance of the lack of a demarcation indicating the selection/rejection of UM coverage by Auto Credit. Hulin stated that she called Auto Credit and asked to speak with Vernon Oliver because he had signed the application. Hulin recalled advising Oliver that he had neither rejected the UM coverage nor checked one of the selections indicating Auto Credit wanted UM coverage. She said she told Oliver the form would have to be returned so he could check off his selection. According to Hulin, Oliver told her that he had signed the form, that he did not want the UM coverage, and she should "just go ahead and check it and not to worry about it." Hulin confirmed she marked the "x" in the application next to the selection, "____1. I REJECT Uninsured/Underinsured Motorist Coverage in its entirety including property damage liability." She did not send a copy of the application with her "x" mark indicating a rejection of UM coverage to Auto Credit. She did not note she had checked off the option rejecting UM coverage anywhere on Auto Credit's application or in its file. Hulin concluded that the mark indicating a rejection in UM coverage by Auto Credit must have been made sometime between March 3rd (the date Pelican notified Huval Insurance of the lack of a selection/rejection indication by Auto Credit) and March 8th because Pelican received the altered application on March 9, 1989.
LIGA urges the garage coverage policy issued to Auto Credit has a valid rejection of UM coverage. We disagree.
Insurers in Louisiana are required to include UM coverage unless specifically rejected by the insured. Rejection or selection of UM coverage must be contemporaneous with the policy application or the policy's issuance. Futch v. Commercial Union Ins. Co., 625 So.2d 1019, 1022 (La.1993).
In the case sub judice, Vernon Oliver, as representative for Auto Credit, submitted the application dated November 16, 1988, coverage under the policy commenced on January 1, 1989, and Hulin marked the application indicating a rejection of UM coverage in March 1989. Thus, rejection of UM coverage was clearly not contemporaneous with the application for or the issuance of the *347 policy. We conclude under the facts of this case there was not a valid waiver of UM coverage by the insured. To the extent the trial court may have concluded the garage coverage policy issued by Pelican did not provide UM coverage, we find that conclusion to be in error.

GARAGE COVERAGE
The trial court may have granted the motion for summary judgment dismissing plaintiffs' claims against LIGA based on a conclusion that the Lexus was not a covered automobile under the policy and, therefore, the Pelican policy provided no coverage to Vernon Oliver. Plaintiffs contend that the Lexus is a covered automobile as a "non-owned auto used in your garage business" within the meaning of the Pelican policy. The policy defines "non-owned autos used in your garage business" as follows:
NON-OWNED AUTOS USED IN YOUR GARAGE BUSINESS. Any "auto" you do not own, lease, hire, rent or borrow used in connection with your garage business described in the Declarations. This includes "autos" owned by your employees or partners or members of their households while used in your garage business.
LIGA urges the Lexus, having been titled in Barbara Oliver's name, could not have been a "non-owned auto used in your garage business" as defined in the Pelican policy because Barbara Oliver d/b/a Auto Credit is juridically synonymous with Auto Credit. Thus, LIGA reasons, any car Barbara Oliver owned would necessarily be excluded from the definition of a "non-owned auto used in your garage business." Although in deposition testimony Barbara Oliver stated the Lexus was titled in her name, she testified that Vernon had negotiated the deal to obtain the Lexus, and that "[h]e just had the car two (2) weeks" prior to the accident. There are several instances in her testimony where she referred to the Lexus as having been Vernon's car. Thus, we find the evidence is inconclusive regarding whether the Lexus was owned by the insured.
Additionally, in order to qualify as a "non-owned auto used in your garage business," the accident must have occurred while the non-owned auto was being used in the course and scope of the insured's business or personal affairs. See Whetstone v. Dixon, 616 So.2d 764, 772 (La.App. 1st Cir.), writs denied, 623 So.2d 1333 (La.1993); Gore v. State Farm Mut. Ins. Co., 26,417, p. 7 (La.App.2d Cir. 1/25/95); 649 So.2d 162, 166, writ denied, 95-0481 (La.4/21/95), 653 So.2d 555. LIGA urges because the accident occurred at 4:11 A.M., Vernon could not have been in the course and scope of the insured's business and, therefore, was not covered under the Pelican definition of a "non-owned auto used in your garage business." According to Barbara Oliver's testimony, on the evening of her husband's death, Vernon had been with Price LeBlanc. She stated that it was not unusual for Vernon to get up in the early morning hours and discuss business with LeBlanc over the telephone. She explained her husband had established a pattern of meeting with LeBlanc at LeBlanc's dealership, and that Vernon would buy cars for Auto Credit to sell. The cars would subsequently be delivered to the used car dealership. According to Barbara's recall, the men had met as early as 4:00 and 5:00 A.M. in the past. We find Barbara Oliver's testimony creates a genuine issue of material fact as to whether Vernon Oliver was within the course and scope of the insured's business at the time of the accident.
Accordingly, we conclude genuine issues of material fact exist as to whether the Lexus was a covered automobile under the Pelican policy which preclude summary judgment at this time.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court sustaining LIGA's motion for summary judgment and dismissing plaintiffs' claims against LIGA is reversed and set aside. This matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal in the amount of $574.97 are assessed to LIGA.
REVERSED AND REMANDED.
NOTES
[1] Judge Carl A. Guidry, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] None of the other named defendants are pertinent to this appeal.
[3] According to the allegations of the Oliver petition, Tracy Maloid was not the legitimate issue of married, living parents, and no tutor had been qualified to represent his interests. The petition requests the appointment of an attorney at law to accept service for and represent Maloid. The petition also asserts claims against defendant Mattie Maloid alleging that she is vicariously liable for the damages of her minor son pursuant to the provisions of La.Civ.Code Art. 2318.
[4] Although Henderson's wife and children assert claims against Vernon Oliver, the plaintiffs in both lawsuits appeal the judgment dismissing their claims against Pelican's successor, LIGA. Thus, for brevity, we refer to the wife and children of Oliver and the wife and children of Henderson collectively as "plaintiffs."
[5] In her deposition testimony, Barbara Oliver identified the handwriting of the signatures affixed to Auto Credit's application as that of Vernon Oliver.