693 So.2d 858 (1997)
Patrick Ray STEPHENSON, et al. Plaintiffs-Appellants,
v.
Jack VAN VLEIT II, et al., Defendants-Appellees.
No. 96-1407.
Court of Appeal of Louisiana, Third Circuit.
April 30, 1997.
*859 Jack Paul Showers, Lafayette, for Patrick Ray Stephenson et ux.
Kenny Layne Oliver, Lafayette, for Jack Van Vleit II et al.
John Oleh Kopynec, Roy J. DiVincenti III, Geraldine Elise Fontenot, Baton Rouge, for Zurich Insurance Company.
Michael Stagg Guillory, Antonio Le Mon, Metairie, for Xerox Corporation.
Before THIBODEAUX, PETERS and SULLIVAN, JJ.
PETERS, Judge.
This litigation originated as a suit by Patrick Ray Stephenson to recover damages sustained in an automobile accident in Lafayette Parish, Louisiana, on April 1, 1994. Two of the defendants, Zurich Insurance Company and State Farm Mutual Automobile Insurance Company, were sued in their capacities as uninsured/underinsured motorist (UM) carriers providing coverage for Stephenson *860 in the accident. This appeal arises as a result of the trial court's granting of Zurich's motion for summary judgment, finding that its policy did not provide UM coverage to Stephenson.

DISCUSSION OF THE RECORD
On April 1, 1994, Patrick Ray Stephenson was an employee of Xerox Corporation (Xerox) and was driving Xerox's 1990 Dodge van. As he attempted to make a left turn from Louisiana Highway 339 onto Failla Road in Lafayette, Louisiana, Stephenson's vehicle was struck from the rear by a 1986 Mazda 323 being driven by Jack Van Vleit III, a minor. The Mazda 323 was owned by Jack Van Vleit II and was covered by a policy of liability insurance issued by Louisiana Farm Bureau Mutual Insurance Company. At the time of the accident, Stephenson was in the course and scope of his employment with Xerox.
Stephenson filed suit, naming as defendants Jack Van Vleit II, individually and on behalf of his minor son, Jack Van Vleit III; Louisiana Farm Bureau Mutual Insurance Company; Zurich Insurance Company (Zurich) as the UM carrier for Xerox; and State Farm Mutual Automobile Insurance Company (State Farm) as his personal UM carrier. Xerox filed an intervention to recover all amounts that it had paid to or on behalf of Stephenson as a result of the accident.
Zurich responded to the suit by denying that it provided UM coverage for the van or Xerox. Based on this defense, Zurich filed a motion for summary judgment, seeking dismissal from the litigation. State Farm also filed a motion for summary judgment, seeking a declaration that Zurich's policy did provide UM coverage for Stephenson's injuries. The trial court rendered judgment granting Zurich's motion for summary judgment and denying State Farm's motion. State Farm has appealed, asserting six assignments of error.

OPINION
In 1996, the Louisiana Legislature amended La.Code Civ.P. art. 966 relative to summary judgments by the passage of Acts 1996, First Extraordinary Session, No. 9, and in doing so, added the following language:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
La.Code Civ.P. art. 966(A)(2) (emphasis added).
Prior to this amendment, summary judgments were traditionally not favored in the law and were to be used cautiously and sparingly. Houston Gen. Ins. Co. v. Commercial Union Ins. Co., 96-0379 (La.App. 1 Cir. 11/8/96); 682 So.2d 1341, writ denied, 96-2950 (La.1/31/97); 687 So.2d 409. However, this amendment did not change the well-settled law on summary judgments and only changed the persuasive nature of the motion before the court. Specifically, the amendment did not change the requirement that a summary judgment be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). As such, prior jurisprudence is still applicable in determining whether the mover has met his burden of proof. Henderson v. Maloid, 96-0285 (La.App. 1 Cir. 11/8/96); 683 So.2d 342, writ denied, 96-2901 (La.1/24/97); 686 So.2d 866.
The first step in our analysis is to examine the record and mover's supporting documents to determine if they are sufficient to resolve any genuine issues of material fact. Natchitoches Parish Hosp. Serv. Dist. v. Rachal, 94-995 (La.App. 3 Cir. 2/1/95); 649 So.2d 1152, writ denied, 95-0528 (La.4/7/95); 652 So.2d 1349. When the trial court is given a choice of reasonable inferences that could be drawn from the facts presented, it must view these inferences in the light most favorable to the party opposing the motion. Id. If this analysis finds the record and supporting documents to be insufficient, then the motion must be denied. Id. If, however, they are found to be sufficient, then the burden shifts to the opponent of the motion to present *861 evidence that there are material facts still at issue. Id.; La.Code Civ.P. art. 967. Prior to this time, the opponent may only rely on the allegations and denials contained in his pleadings. Id. The opponent's allegations must receive the benefit of the doubt and be considered as true when they conflict with the mover's assertions. Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342 (La.1991).
State Farm contends that the trial court erred in six respects:
I. The Trial Court erred in considering extrinsic evidence, and specifically, the Affidavit of Eugene Freeman, an authorized representative of Xerox, in its determination that an insurance policy was "executed contemporaneously with the signing of the UM rejection on February 21, 1994" and in allowing the extrinsic evidence to be introduced for the purpose of divesting persons qualified as an insured of their rights under the express terms of the policy.
II. The Trial Court erred in ruling that the purported uninsured/underinsured motorist waiver by a representative of Xerox was valid.
III. The Trial Court erred in ruling that an attempted rejection on February 21, 1994 applied to an existing policy which became effective on January 1, 1994.
IV. The Trial Court erred in ruling that an endorsement dated March 29, 1994 (after February 21, 1994) did not create a new policy requiring a corresponding rejection.
V. The Trial Court erred in granting the Motion for Summary Judgment filed by Zurich as material issues of fact existed.
VI. The Trial Court erred in failing to find the insurance policy in question to contain an invalid uninsured motorist rejection/selection form and in failing to grant State Farm's Motion for Summary Judgment.
We find that the record and the documents filed in support of Zurich's motion for summary judgment are sufficient to resolve any material issues of fact and that State Farm did not present sufficient evidence to establish material facts at issue. Thus, we find no merit in State Farm's assignments of error and Zurich is entitled to judgment as a matter of law. Therefore, for the following reasons, we affirm the trial court's decision.
La.R.S. 22:1406(D)(1)(a)(i) requires that UM coverage is to be provided "in not less than the limits of bodily injury liability" coverage under a policy "covering liability arising out of the ownership, maintenance, or use of any motor vehicle" on the public highways of this state. This section further states that "the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits." Additionally, under this section, the only restriction on selecting lower limits is that the limits shall not "be less than the minimum liability limits required under R.S. 32:900." The rejection must be in writing on a form designed by the insurer and "signed by the named insured or his legal representative." La.R.S. 22:1406(D)(1)(a)(ii).
The threshold question for our analysis in this case is whether Xerox effected a valid rejection of UM coverage. In Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992), the supreme court set forth the requirements for a valid waiver of UM coverage. Such a rejection must be in writing and signed by the named insured or his legal representative. Id. Additionally, "the form used by the insurance company must give the applicant the opportunity to make a `meaningful selection' from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage." Id. at 197.
The policy issued by Zurich is identified as a commercial automobile policy and purports to have national coverage. As such, the policy attempts to address the question of UM coverage on a state-by-state basis. One portion of the policy, identified as the "Uninsured, Underinsured Motorists Coverage Selection/Rejection Acceptance" form begins with the following language:

*862 This policy, number BAP XX-XX-XXX-XX contains the Uninsured/Underinsured forms listed below applicable to all states. The forms designated allow you to select from various limits and coverage options or to reject coverage by marking the appropriate selection or rejection boxes on each form and then signing and dating all of the forms. You may elect to purchase limits higher than the minimum limits prescribed in certain states.
Your signature on this form signifies your acceptance of the limits shown on this form and the attached state forms, with the understanding that these limits are the minimum mandatory and that coverage is rejected entirely where permitted.

(Emphasis added).
This language is followed by a listing of the state-by-state form titles. The initial language and the state form title listing consist of two pages.
The next two pages of the form include a chart which lists a state-by-state summary of coverage under the UM provisions of the policy. In the chart, Louisiana is described as having no UM coverage under the policy. The following language appears at the end of the chart listing:
This summary is not a substitute to reviewing each individual state's selection/rejection
form for UM and UIM. You are urged to do so.
The completion of this form precludes the necessity of showing the policy number, agent
and Named Insured on the listed forms attached to this policy. By signing and dating this
form in the spaces provided below, you agree that you have read and understand each state
form and that the selections or rejections marked on the state forms have been accepted by
you without signing and dating each form. (See below)
This policy number: BAP XX-XX-XXX-XX 
Other policy numbers to which a copy of this form is attached: 
 TAP XX-XX-XXX-XX, MA 68-38-008-01 
------------------------------------------------------------------------------------------
Date this election is effective: 1-1-94 
Named Insured: XEROX CORPORATION 
Agent/Broker: JOHNSON & HIGGINS OF CT. 
Signature of First Named Insured: s/Eugene J. Freeman 
Date signed by First Named Insured: 2/21/94 
It is my understanding that we are purchasing uninsured and underinsured motorists
coverage only where mandatory and then only at the minimum limits obtainable.
(Emphasis added).
All of the information found on the four pages of this form is printed or typed except for the signature of Eugene J. Freeman and the February 21, 1994 date.
*863 The Louisiana form identified in the listing is attached to the policy and is entitled "Uninsured Motorists Bodily Injury and Property Damage Coverage Selection/Rejection." It contains the following language concerning UM bodily injury coverage:
Part I Your policy provides "bodily injury" uninsured motorists coverage, which includes
 "bodily injury" underinsured motorists coverage equal to your "bodily injury"
 liability limits. You have the option of rejecting "bodily injury" uninsured
 motorists coverage entirely or selecting "bodily injury" uninsured motorists
 coverage in limits less than your policy's "bodily injury" liability limits.
 [] I hereby reject "bodily injury" uninsured motorists coverage which includes
 "bodily injury"
 underinsured motorists coverage.
 [] I hereby select "bodily injury" uninsured motorists coverage which includes
 "bodily injury"
 underinsured motorists coverage at the following optional limit which does not
 exceed the "bodily injury" liability limit on my policy nor is it less than the state's
 financial responsibility limit.
 [] $50,000
 [] $100,000
 [] $250,000
 [] $350,000
 [] $500,000
 [] $1,000,000
 [] Other ____________________
The bottom of this one-page form reads as follows:
 I understand that my selection applies to all of the vehicles on my policy, including any
 additional or replacement vehicles which I may add in the future, unless I request different
 coverage in writing.
 Policy number: _____________________________________________________________________________
 Date the above selection/rejection is to be effective: _____________________________________
 Named Insured's signature: _________________________________________________________________
 Date of signature: _________________________________________________________________________
The box rejecting uninsured motorists coverage is marked with an "X," but this is the only mark added to the page. The lines at the end of the form have been left blank.

Assignments of Error No. I and No. III.
Some of State Farm's assignments of error are interrelated, and we will address them together to avoid repetition. The first and third assignments are so interrelated. In its first assignment of error, State Farm contends that the trial court erred in considering the affidavit of Eugene Freeman, an authorized representative of Xerox, in its determination that an insurance policy was "executed contemporaneously with the signing of the UM rejection on February 21, 1994." In its third assignment of error, State Farm contends that the trial court erred in ruling that an attempted rejection of UM coverage on February 21, 1994, applied to an existing policy which became effective on January 1, 1994.
In connection with its motion for summary judgment, Zurich presented its policy and the affidavit of Eugene Freeman. The affidavit states in part that Mr. Freeman initially secured automobile liability insurance coverage through Zurich for Xerox in 1993. The affidavit further states:
[t]hat as Manager of Casualty Insurance for Xerox Corporation he did in fact renew the policy issued by Zurich Insurance Company for the following year (1994) and he did in fact sign a UM Waiver/Rejection *864 Form, provided by Zurich Insurance Company, as a legal representative of Xerox Corporation on February 21, 1994 for renewal of Policy No. BAP6838006-00, effective dates of coverage being January 1, 1994 to January 1, 1995.
We acknowledge that this language is somewhat ambiguous as it is not clear whether Mr. Freeman stated that he only signed the UM rejection form on February 21, 1994, or whether he also signed the policy renewal on that same date. However, we conclude that this distinction is irrelevant. This court has previously recognized that a valid rejection or reduction in UM coverage may occur after the issuance of the insurance policy. Deville v. Allstate Ins. Co., 96-161 (La.App. 3 Cir. 10/9/96); 688 So.2d 1122. Thus, even if the policy were issued on January 1, 1994, and the UM rejection form were not executed until February 21, 1994, it would still be a valid rejection of UM coverage for accidents arising after February 21, 1994, if the form met the requirements necessary to reject UM coverage. Therefore, we find no merit in State Farm's first and third assignments of error.

Assignments of Error No. II and No. VI.
In these assignments, State Farm contends that the trial court erred in ruling that the UM waiver executed by Mr. Freeman was valid and in failing to grant State Farm's motion for summary judgment because the UM rejection attempt was invalid. State Farm argues that Xerox was not provided with a meaningful choice as required by Tugwell, 609 So.2d 195, and that the rejection was invalid because the Louisiana form was not signed.
As previously noted, the supreme court has held that in order to effect a valid rejection of UM coverage, the rejection must be in writing and signed by the named insured or his legal representative. Id. Additionally, "the form used by the insurance company must give the applicant the opportunity to make a `meaningful selection' from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage." Id. at 197.
In arguing that Xerox was not given a meaningful choice in selecting or rejecting UM coverage, State Farm asserts that Xerox was not provided with the option of UM benefits equal to its liability limits unless it filled in the "Other" portion of the form. A clear reading of the Louisiana form reflects otherwise. The Louisiana form clearly states that Xerox would be automatically provided with UM coverage equal to the bodily injury liability limits of the policy if it did not select lower limits or reject UM coverage entirely. In fact, the form provided Xerox with a plethora of UM coverage options. The obvious purpose of the "Other" blank was to allow Xerox to select any amount of UM coverage that it desired so long as it was not less than Louisiana's financial responsibility limit.
State Farm next argues that the rejection signed by Mr. Freeman was not sufficient to reject UM coverage for Louisiana. In other words, the Zurich policy was not valid because the Louisiana form was not signed and dated. The trial court concluded that Mr. Freeman's signature indicating that he had read and understood each state's form, which would include Louisiana's form, "sufficiently incorporated the form and was in compliance with the requirement that UM rejection be in writing and signed by the insured or the insured's legal representative."
La.R.S. 22:1406(D) provides in pertinent part:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(ii) After September 1, 1987, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and *865 delivered, irrespective of whether physically attached thereto.
(Emphasis added).
Thus, the question before us is whether the expanded form used complies with this statute. We find that it does. The rejection was signed by the insured's legal representative on a form designed by Zurich. The form provided for an express, affirmative act on the part of Xerox which had the effect of unmistakably and unambiguously rejecting UM coverage as required by La.R.S. 22:1406(D)(1)(a). This is unlike the situation in Henson v. Safeco Ins. Cos., 585 So.2d 534 (La.1991), wherein the supreme court held that merely signing a general application for insurance did not indicate a specific intent to reject UM coverage. We do not find that Henson stands for the proposition that the expression of intent must comply with a specific format. It simply requires "that the application present the applicant with a separate or conspicuous rejection form that informs the applicant of his options regarding UM coverage and requires the applicant to do some affirmative act rejecting coverage, such as checking the rejection box himself or initialing or signing the rejection." Nelson v. Ragan, 26,724, p. 7 (La.App. 2 Cir. 4/5/95); 653 So.2d 185, 189, writ denied, 95-1161 (La.6/16/95); 655 So.2d 332. In the present case, Mr. Freeman did an affirmative act to reject UM coverage by checking the box indicating his decision to waive UM coverage for Xerox in Louisiana under the policy and clearly signed a document indicating his intent to reject UM coverage. The fact that he did not sign the individual Louisiana UM rejection form does not make the rejection any less effective.

Assignment of Error No. IV.
Made a part of the Zurich policy is an endorsement which amends the policy in regard to pollution costs or expenses covered by the policy. The endorsement bears a stamped date of March 29, 1994. State Farm contends that this endorsement created a new contract requiring a new valid UM rejection. Zurich contends that the endorsement was a part of the original policy and that the stamped date is nothing more than an "Audit stamp." The trial court concluded that "the endorsement affecting the policy at issue merely amends the policy in regard to `covered pollution cost or expense.'" It went on to conclude that the endorsement did not create a new policy that would require a new UM rejection and thereby rejected State Farm's argument on this point. We agree and find no merit in this assignment.
As a general rule, an initial valid rejection of UM coverage is also valid for renewal, reinstatement, or substitute policies. Dempsey v. Automotive Cas. Ins., 95-2108 (La.App. 1 Cir. 6/28/96); 680 So.2d 675. A "renewal" policy is one issued and delivered to replace, at the end of the policy period, a policy previously issued and delivered by the same insurer. Id.; La.R.S. 22:636.1(A)(5). Thus, a renewal can only occur at the end of the policy period that it renews, and it contemplates uninterrupted coverage. Dempsey, 95-2108; 680 So.2d 675. A "reinstatement" policy is intended to restore the insured to all of the benefits accruing under the policy contract. Id. In order for there to be a reinstatement, there must be a period during which the insured is no longer covered by the policy. Id.
There is scant jurisprudence concerning what qualifies as a "substitute" policy. Cases have held that it is possible to have a substitution of insureds and/or vehicles without effecting a new policy. Id. However, if vehicles or insureds are added to the policy, then it is generally found to be a new policy rather than a substitute policy. Id. An increase in liability coverage has also been found to effect a new policy requiring a new rejection or selection of UM coverage. Id.
The endorsement at issue simply changed the policy in regard to pollution costs or expenses covered by the policy. Based on the jurisprudence, we conclude that this endorsement merely caused a substitution rather than a new policy. Thus, it was not necessary for Xerox to execute a new rejection or selection of UM coverage as a result of this endorsement. We find no merit to this assignment of error.
*866 Assignment of Error No. V.
Finally, State Farm argues that there still exist unresolved issues of material fact and that these unresolved issues preclude the granting of summary judgment in favor of Zurich. State Farm contends that the Zurich policy contains 155 endorsements attached to Schedule A, all of which declare "This endorsement changes the policy. Please read it carefully." Since none of these endorsements are signed or dated, State Farm alleges that a material issue of fact remains as to when these endorsements were added to the policy. We note that State Farm raises this argument for the first time on appeal, and generally, appellate courts will not consider issues raised for the first time on appeal. Segura v. Frank, 93-1271, 93-1401 (La.1/14/94); 630 So.2d 714, cert. denied sub nom. Allstate Ins. Co. v. LIGA, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). For that reason, we decline to address this issue raised for the first time on appeal.

DISPOSITION
For the foregoing reasons, the judgment of the trial court is affirmed in all respects. Costs of this appeal are assessed against State Farm Mutual Automobile Insurance Company.
AFFIRMED.