PER CURIAM.
| ¡.Relator, State Farm Mutual Automobile Insurance Company (“State Farm”), filed this writ application seeking supervisory review of the district court’s judgment denying its motion for summary judgment. For the following reasons, we grant the writ and reverse the district court’s judgment.
FACTS AND PROCEDURAL HISTORY
The plaintiff, David R. Bordelon, Jr., filed suit seeking recovery for damages sustained as a result of a motor vehicle accident which occurred on May 12, 2006.[1] *423 At the time of the accident, plaintiff was employed by and operating a vehicle provided by his employer, River City Air Conditioning, Inc. (“River City”). Plaintiff alleges that defendant, State Farm, has a policy of uninsured/underinsured motorist (“UM/UIM”) coverage applicable to the vehicle that he was operating. State Farm admits that it issued a policy of automobile liability insurance for the vehicle to River City, which was in effect from May 1, 2006, to May 1, 2007. The policy was issued on May 3, 2006, and listed a policy premium due for UM/UIM coverage. However, on May 8, 2006, Brigham Ragusa, owner/manager of River City, declined UM/UIM coverage, and a purportedly valid UM/UIM rejection form was executed and so reflects. An amended policy was then issued on May 15, 2006, reflecting no UM/UIM coverage. Also attached to the policy of insurance is a form entitled, 6080Q Vehicle Schedule, dated May 15, 2006, which shows that there is no UM/UIM coverage on any vehicle on this policy.
|sBrigham Ragusa attests in his affidavit that he did not contract with State Farm to provide UM/UIM insurance coverage on the River City vehicles, and he did not pay for this additional coverage. Moreover, Deidra Golphin, a State Farm representative, attested by affidavit that there was no UM/UIM insurance coverage applicable to the insurance policy at issue.
State Farm filed a motion for summary judgment, arguing that River City did not have UM/UIM insurance coverage on May 12, 2006, the date of the accident. State Farm argues that the May 8, 2006 UM/ UIM rejection form met all six requirements as set forth in the Louisiana Supreme Court opinion in Harper v. Direct Gen. Ins. Co., 2008-2874 (La.2/13/09), 2 So.3d 418, citing Duncan v. U.S.A.A. Ins. Co., 2006-0363 (La.11/29/06), 950 So.2d 544. Moreover, the policy was updated on May 15, 2006, reflecting no UM/UIM coverage on the policy.
The plaintiff opposed the motion, arguing that the UM/UIM rejection form was not effective on the date it was signed, because it must be signed contemporaneously with the issuance of the policy.
On October 13, 2009, the trial court denied the motion for summary judgment. The trial court’s written reasons for judgment state, in pertinent part:
Mr. Bordelon’s employer, who provided him with the vehicle, signed a UM rejection form on May 8, 2006, just four days before the accident at issue in this case. However, the policy which was in effect at the time of the accident was issued on May 3, 2006, and that policy included UM coverage. The new amended policy, which excluded UM coverage, was not issued until May 15, 2006, three days after the accident. The Court finds that the policy in effect on May 12, 2006, at the time of the accident, was the May 3, 2006 policy. Therefore, there was UM coverage on the vehicle driven by Mr. Bordelon, and State Farm’s Motion for Summary Judgment is denied.
State Farm contends that the trial court erroneously relied on “dicta” in the case of Futch v. Commercial Union Ins. Co., 625 So.2d 1019, 1020 (La.1993) to support its ruling. State Farm further contends that the trial court erred in disregarding Duncan, which holds that the date the UM form is signed is the date it is effective.[2]
*424 ISSUE PRESENTED FOR REVIEW
In connection with this writ application, there is only one issue for review and consideration: whether the trial court erred in finding that the UM/UIM rejection form at issue was not effective on the date it was signed.
LAW AND DISCUSSION
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. Duncan, 950 So.2d at 546. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish those ends. La. Code Civ. P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Duplantis v. Dillard’s Dept. Store, 2002-0852, p. 5 (La.App. 1st Cir.5/9/03), 849 So.2d 675, 679, writ denied, 2003-1620 (La.10/10/03), 855 So.2d 350. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B).
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987); A.I.U. Ins. Co. v. Roberts, 404 So.2d 948, 949 (La.1981). The | sobject of UM insurance is to provide lull recovery for automobile accident victims who suffer damages caused by a tortfeasor not covered by adequate liability insurance. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992); Henson v. Safeco Ins. Companies, 585 So.2d 534, 537 (La.1991); Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 578 (La.1982).
UM coverage is determined not only by contractual provisions, but also by applicable statutes. Duncan, 950 So.2d at 547. Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability insurance policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected. Id.
The UM statute is to be liberally construed and a rejection,of the coverage provided by law must be clear and unmistakable. Roger, 513 So.2d at 1130. The insurer bears the burden of proof that a rejection of coverage or a selection of lower limits has been legally perfected.[3]
*425 ¡(¡We have reviewed the UM/UIM rejection form signed by Mr. Ragusa and find it is compliant with the six requirements set forth by the Louisiana Supreme Court in Duncan, and thus, is a facially valid waiver of UM coverage.[4] Indeed, the plaintiff has not asserted that it is not. Instead, plaintiffs claim is that the form is ineffective, because it was not executed contemporaneously with the issuance of the policy. Impliedly, the trial court agreed with this assertion, because the trial court found that the May 3, 2006 policy, which provided UM coverage, was still in effect, because the amended policy was not issued until May 15, 2006, or after the accident occurred. Therefore, the trial court essentially found that the waiver signed by the insured on May 8, 2006, was ineffective on that date.
The plaintiff relies on Futch, 625 So.2d 1019, a case in which the validity of a waiver of UM coverage was at issue. The plaintiff in that case suffered devastating injuries in an automobile accident and claimed underinsured motorist damages from the excess/umbrella insurer of his employer, Manna International Manufacturing, Inc. The district court granted summary judgment in favor of the insurer, finding a valid rejection of UM coverage. The Fourth Circuit Court of Appeal affirmed.
The Louisiana Supreme Court reversed, with several justices dissenting and several concurring. The majority held that genuine issues of material fact remained, including whether the individual who executed the |7waiver, midway into the policy period, had the authority to do so. The majority, quoting from the version of La. R.S. 22:1406 D(l)(a) in effect at the time of the 1984 accident, reasoned that the “implication is that the rejection or selection must be contemporaneous with a policy application or the policy’s issuance.... Since the rejection or selection becomes part of the policy, it should not affect an existing policy.” Futch, 625 So.2d at 1022. In vacating the trial court judgment and remanding for a trial on the merits, the supreme court stated that even if Lemieux (the representative of the insured) were authorized to sign the rejection of UM *426 coverage, it is doubtful that the rejection could alter the existing policy midway into the policy period. Id.
Justice Hall concurred in the result, but expressly noted that the effect of a waiver executed during the policy period is an issue that should be decided by the trial court on remand, without premature comment. Justice Kimball agreed that any discussion of whether a UM waiver may be valid if made after a policy’s issuance is “unnecessary dictum.” Justice Lemmon concurred, but expressly declined to join in the “dicta” regarding rejection of UM coverage. Id. at 1022-23. On rehearing, the court pointed out with emphasis that the decision merely reversed the summary judgment and “does not preclude the litigation of any issues of law or fact between the parties.” Id. at 1023.
Since then, the Futch “dicta” has been primarily cited with disapproval.[5] However, plaintiff contends that this court followed the principle established in Futch in Henderson v. Maloid, 96-0285, 96-0286 (La.App. 1st Cir.11/8/96), 683 So.2d 342, writ denied, 96-2901 (La£/24/97),8 686 So.2d 866. In Henderson, the plaintiffs were the wife and children of the insured driver and a passenger killed in an automobile accident.[6] Prior to his death, on November 16, 1988, the insured signed an application for insurance; however, the document did not include a demarcation indicating the selection/rejection of UM coverage. Almost five months later, an employee of the insurance agent contacted the insured concerning his failure to check off his selection. According to the employee, the insured instructed her that he had signed the form, that he did not want UM coverage, and that she should “just go ahead and check it and not to worry about it.” Pursuant to this purported instruction, the employee testified that she marked an “x” next to the selection rejecting UM coverage. Notably, the employee testified that she did not send a copy of the altered form, indicating a rejection of UM coverage, to the insured. Additionally, she did not note the alteration anywhere on the application or in the insured’s file. Nevertheless, she testified that the mark indicating a rejection in UM coverage “... must have been made sometime between March 3rd ... and March 8th.... ” Id. at 346. The insured (deceased) was obviously unavailable to corroborate this testimony. Indeed, no other witness was offered to corroborate the employee’s testimony. Under the tenuous facts of Henderson, this court concluded that there was not a valid waiver of insurance coverage.
We find the plaintiffs reliance on this court’s opinion in Henderson misplaced. Significant to this court’s ruling in Henderson was the feet that someone other than the insured the agent, marked the waiver rejecting UM | coverage.[7] More *427 over, no one connected with the insured testified that the waiver of coverage reflected the deceased insured’s intent. This court pointedly noted that under the facts of that case, there was not a valid waiver of UM coverage by the insured.
In contrast, in the instant case, Mr. Ra-gusa attested that he is the owner/manager of the insured business; that he is responsible for making all management decisions on behalf of the business; that he contracted with State Farm to insure a fleet of vehicles owned by the business; that he did not wish to have UM/UIM coverage for the vehicles; that he executed a waiver on May 8, 2006, reflecting his intent to waive UM/UIM coverage; and that he did not pay for nor was he charged for such coverage. Deidra Golphin, a State Farm employee for 17 years, attested that there was no UM insurance coverage applicable to the insurance policy at issue.
In fact, plaintiff has made no allegation that Mr. Ragusa did not sign or otherwise properly complete the rejection form. We observe that the form identifies the insured company, is signed by the legal representative for the company, is dated, the selection of no UM/UIM coverage is initialed, and the form contains the policy number and, therefore, is in compliance with the six tasks identified in Duncan.
Additionally, we distinguish Henderson on the basis that the version of the UM statute in effect at the time that rejection form was signed, La. R.S. 22:1406 D(l)(a)(i), has since been amended on several occasions. For example, at the time the Henderson rejection was initialed by the insurer’s |inemployee, each insurer designed its own form.[8] Recognizing the problems inherent in allowing insurers to design their own UM forms, the statute was amended to provide that the selection or rejection be made only on a form prescribed by the commissioner of insurance.[9] The validity of a waiver is determined by the law in effect at the time the waiver is executed. Roger, 513 So.2d at 1181-32. The version of the statute in effect at the time Mr. Ragusa signed the waiver, La. R.S. 22:680(1)(a)(ii), also contained additional language, which stated in pertinent part:
An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance.[10]
The statute provides no temporal limitation for executing a UM selection/rejection form. Moreover, Henderson predates Duncan. In Duncan, the supreme court *428 expressly proclaimed “... the insured dates the form to determine the effective date of the UM waiver.” Duncan, 950 So.2d at 552. Mr. Ragusa knowingly rejected UM/UIM coverage prior to the occurrence of the accident at issue and thus before the plaintiff had accrued any rights.[11] As such, the UM/UIM rejection was effective to exclude such coverage, notwithstanding that the issuance of the amended policy, a formality, occurred after the date of the accident.[12]
| n CONCLUSION
There is no provision in the UM statute that mandates the selection/rejection of UM coverage by an insured only at the application for or issuance of a policy. For the reasons assigned, we find Henderson is distinguishable from the case at issue. Accordingly, we reverse the judgment of the trial court rendered in open court on October 13, 2009, and signed on October 29, 2009, and render judgment granting State Farm’s motion for summary judgment, thereby dismissing State Farm from the litigation.
WRIT GRANTED. JUDGMENT REVERSED AND RENDERED.

. The petition alleges that plaintiff struck a vehicle making a left turn in front of him. The driver of the other vehicle, Raymond E. Murry, Jr., was an alleged permissive user of a vehicle owned by Ascension Pony Cars. Western Heritage Insurance Company issued *423 a policy of automobile liability insurance to Ascension Pony Cars. Murry and Western Heritage Insurance Company are also named defendants in the petition.

. In addition to this writ application. State Farm tiled an appeal docketed as 2010 CA 0216. On March 26, 2010, this court dismissed the appeal, noting that the denial of a *424 motion for summary judgment, an interlocutory judgment, is not an appealable judgment.

. Louisiana Revised Statutes 22:680(l)(a)(ii), in effect at the time the waiver at issue was signed, provides:
Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is is *425 sued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

. In Duncan, 950 So.2d at 551-52, the Louisiana Supreme Court addressed the requirements necessary to a valid UM waiver. In closely examining the waiver form promulgated by the Commissioner of Insurance, the supreme court found that the prescribed form requires six tasks, all pertinent in rejecting UM coverage, as follows: (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits arc chosen, then filling in the amount of' coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date. An insurer benefits from the rebut-table presumption that the insured knowingly rejected UM coverage when a form prescribed by the Commissioner of Insurance has been properly completed and signed. Such presumption exists because the prescribed form, if properly completed, clearly evidences the insured’s intent to waive UM coverage. Duncan, 950 So.2d at 552.

. See, e.g. Boyd v. Schroeder, 98-0915 (La.App. 4th Cir., 2/10/99), 735 So.2d 672, writ denied, 99-1420 (La.9/3/99), 747 So.2d 543; White v. Shoalmire, 30, 158 (La.App. 2nd Cir. 1/21/98), 706 So.2d 588; and Deville v. Allstate Ins. Co., 96-161 (La.App. 3rd Cir. 10/9/96), 688 So.2d 1122.

. The deceased, Vernon Oliver, worked for Auto Credit and was alleged to have been engaged in the course and scope of his employment at the time of the accident. Although Auto Credit, Oliver’s employer, was a sole proprietorship registered in the name of Oliver’s wife, his wife testified that he was integral to the dealership's operations, including insurance matters.

. More recently, in Gray v. American National Property & Cas. Co., 2007-1670 (La.2/26/08), 977 So.2d 839, 848, the Louisiana Supreme Court recognized the inherent danger in allowing an insurance agent or insurance company employee to complete a UM selection form after it leaves the hands of an insured or insured's representative stating:
*427 “... [it] would provide an opportunity for an unethical agent or insurer to till in a lower UM coverage limit different from the amount the parties agreed upon. And, even the possibility that an agent or insurer could somehow manipulate the amount of coverage provided without the insured’s knowledge and/or consent undermines the purpose....”

.In 1987 La. Acts No. 436, § 1, La. R.S. 22:1406 was amended to require that any rejection or selection of lower limits shall be made only on a form designed by each insurer. See Duncan, 950 So.2d at 548.

. 1997 La. Acts, No. 1476 § 3, amended La. R.S. 22:1406(D)(l)(a)(ii) to so provide.

. This language is also included in the current version of the statute; however, pursuant to 2008 La. Acts, No. 415 § 1, effective January 1, 2009, the current provisions of Title 22 of the Louisiana Revised Statutes of 1950 were redesignated into a new format and number scheme without changing the substance of the provisions. Pursuant to the redesignation, La. R.S. 22:680 was renumbered and the UM coverage statute is now codified in La. R.S. 22:1295(l)(a).

. See Washington v. Savoie, 92-2957 (La.4/11/94), 634 So.2d 1176 (the Louisiana Supreme Court held that a valid rejection of or reduction in UM coverage may occur after issuance of an insurance policy although, under the facts of that case, the court disallowed the correction or reformation of the UM coverage rejection form to reflect the parties intent after the occurrence of injuries to insureds under the policy).

. See, e.g., Badeaux v. Cook, 537 So.2d 725 (La.App. 5th Cir.1988), writ granted, 538 So.2d 603 (La.1989), writ dismissed, (May 22, 1989) (the insured executed a waiver reducing UM limits from $500,000 to $50,000, but the policy was not endorsed to reflect the change prior to the accident. The majority held that the reduction was effected upon execution of the waiver, notwithstanding a policy provision requiring that "the policy may not be changed or waived except by endorsement issued by the insurer.”); see also Alexander v. Allstate Ins. Co., 493 So.2d 677 (La.App. 2nd Cir.1986) (a rejection signed three months after the issuance of the policy was effective; the form of UM waiver was controlled by statute and not by a policy provision which required that all changes be made by endorsement).